By the Court.—O’Gorman, J.
In this ¿ase, the plaintiff’s complaint was dismissed, on the evidence, as presented on his behalf, and the question on this appeal is, whether the learned trial judge erred in so ruling. The action was brought by the plaintiff, a servant of the defendants, to recover damages for severe personal injuries incurred by him, by reason of the failure of the defendants to perform their duty to the plaintiff, as masters.
The evidence, as presented by the plaintiff, disclosed these facts: The defendants were dry goods merchants at 466 and 468 Broadway, New York City, where the injury occurred on the 7th day of August, 1882. Their store consisted of the first floor in this *195 double building and the basement below, and extended from Broadway to Crosby street. The ceiling of the basement was on a level with the sidewalk, and was seventeen feet above the floor.of the basement. This basement was used for the stock and as a shipping room. On the Crosby street side there was an Otis sidewalk elevator, which ran from the basement up to the sidewalk, and was used to take goods out of, and into the basement. The opening or hatchway at the mouth of the elevator was on the sidewalk, a'nd was closed by two heavy iron doors fastened at the sides on hinges. When let down the doors came together at the middle of the hatchway, and an iron staple in one door went through a hole in the other door, and they were fastened by an iron pin put through the staple on the under side of the doors.
The plaintiff, at the time of the injury, was, and for three years prior thereto had been, in the employ of the defendants as a general porter, and it was part of his duties, every second or third week, to close the store, including the closing of the iron doors over the elevator, other employees closing the rest of the time. The plaintiff, during the three years he was with defendants, closed the iron doors over the elevator in this way: He would go out on the sidewalk at the rear of the store and let down the iron doors over the hatchway. He would then go in the store and down the stairs to the basement, get on the platform of the elevator, pull down on the chain a little, and run the elevator up far enough so that he could reach up and put the iron pin through the staple on the underside of the iron doors. When up far enough to do this he would pull upon the ch lin a little, and stop the elevator; then reach up and put the iron pin through the staple ; then pull up on the chain, and run the elevator down to the bottom. Other porters closed the iron doors over the hatchway in the same way during the three years plaintiff *196 was with defendants, and before he came. The defendants told plaintiff, through Campbell, to close in this way. The defendants had seen plaintiff use the elevator in this way time and time again, and had not objected. They had provided no other means for closing the iron doors. Campbell was the defendants’ shipping cleric, and. had full charge of down stairs, and of the porters there. His duties kept him usually in the basement.
On the 7th of August, 1882, between six and half-past six o’clock in the afternoon, the plaintiff began to close, as usual. He went to the sidewalk on the Crosby street side, and let down the iron doors over the hatchway, then went into the store and down the stairs to the basement, stepped upon the platform of the elevator and pulled down on the chain to run the elevator up far enough so that he could reach up and put in the iron pin. After the elevator had .ascended far enough for him to do this, he pulled up on the chain, as usual, to stop the elevator, but it would not stop. It carried him up and crushed him against the iron doors, injuring him severely. On the day of the injury, the engine and elevator had been undergoing repairs, and the repairs were not completed at the time the injuries were received. The plaintiff did not know that the elevator had been undergoing repairs,and had no notice from the defendants, or anybody, that the elevator was in a dangerous condition.
Defendants knew that the elevator was undergoing repairs that day, and knew as late as four o’clock in the afternoon, that the repairs would not be completed that day, but they did not give the plaintiff any notice or warning that the elevator was out of repair. McCoy, the “ elevator man,” who did these repairs on the elevator, left off working at about five o’clock in the evening, having effectually shut off the steam power, intending to finish his work on the following morning. The elevator, as he left *197 it that evening, was not in its ordinary working order. A short time before he left, Herraran, one of the defendants, went into the basement, and had a conversation with Campbell, the shipping clerk. Herr-man said—“ These goods must be shipped.” Campbell said—The elevator is not in order—They could not be. Herraran replied—“ Damn it, they must go.” He then left the basement. Some time afterwards, between five and six o’clock, Campbell had the goods put in the elevator, and they went up. The steam must have been put on the elevator, but by whom it was applied, the testimony does not show. A few minutes after these goods had been thus raised by use of the elevator,—about six o’clock—the plaintiff, attempting to shut the elevator for the night, as was his duty, and in the manner ordinarily used by him for that purpose, was caught in the elevator and crushed by reason of the absence of the means he had always found in the elevator to stop its ascent when he pleased. This defect was the result of the repairs which had been begun that day, but left unfinished.
The question now is, whether, giving to this evidence, and to all legitimate presumptions and inferences derivable therefrom, the force and effect most favorable to the plaintiff,v the dismissal of the plaintiff’ s complaint was error, inflicting injustice on the plaintiff. Did any failure.of the defendants to perform the duty they owed to the plaintiff as their servant, cause the injury to him ?
In considering this question, it must be borne in mind that the relation of the master is not that of insurer of the safety of his servant. But the master is bound to use all reasonable care, diligence and caution in providing for the safety of those in his employ.
The master is bound to exercise ordinary care in seeing to it that his servant is furnished with sound *198 and suitable tools and machinery in the prosecution of his work, and that the same be kept in repair. Benzing v. Steinway, 101 N. Y. 552. “ Ignorance by the master of defects in the instrumentalities used by the servant in performance of his work is no defence * * * when, by the exercise of ordinary care and inspection, the master could have discovered and remedied defects, or avoided danger incident therefrom.” lb. p. 553.
The defendants in this case knew, or were bound to know, that the elevator had been, on the day of the injury to plaintiff, under repair ; that the repairs had not been completed, and that the elevator was out of order. They knew, also, that it was the duty and custom of the plaintiff to shut the iron doors and use the elevator for that purpose at night, when the day’s business was done. The energy of the language used by one of the defendants, in telling Campbell that the goods should be got up, notwithstanding his knowledge that the elevator was out of order, may be presumed to have been the inducing cause of the use of the elevator by defendants’ men, and the application of steam power necessary for its use. If the elevator had not been thus put to work, in its then incomplete condition, there is no reason to believe that the plaintiff would have received the hurt. During all that day, and especially after the' “ elevator man” left off work, the elevator was in a condition, unsafe for use by the plaintiff, in shutting it for the night, as was his duty to do, and in the manner which he had always adopted. The defendants were hound to know these facts, and they were bound to warn the plaintiff of these facts and of the new danger to which he was exposed. It was a new element of danger, against which they were bound to put plaintiff on his guard. 1 Sherman & Redfield on Negligence, § §195, 203:. Corcoran v. Holbrook, 59 N. Y. 520, 521.
*199 The defective and dangerous condition of the defendants’ elevator on the evening of the accident here, was not one of the risks of his employment, which plaintiff assumed.
In my opinion there was enough proved on the part of the plaintiff, on the facts in evidence, and on the presumptions and inferences naturally and reasonably deducible therefrom, to warrant a jury in finding that the defendants have been derelict in the performance of the duty which, as masters, they owed to the plaintiff; that they did not exercise on his behalf the ordinary care which the circumstances called for, and that the dismissal of the plaintiff's complaint, was error.
The judgment should be set aside, and a new trial ordered, with costs to the appellant to abide the event.
Freedman, J., concurred.